## Cornett v. Commonwealth.

(Decided January 14, 1914.)

## Appeal from Clay Circuit Court.

1. Homicide—Issues of Fact—On Appeal Verdict Not Disturbed on Account of.—On appeal from a judgment of conviction for homicide, the appellate court will not pass upon issues of fact raised by the record, further than to determine whether there was any evidence to support the verdict.

2. Homicide—Evidence As to State of Defendant's Feelings Toward Deceased—Testimony in Relation to Offered by Witnesses Other Than the Defendant—When Competent.—On the trial of a husband under an indictment for the murder of his wife, he may prove by a witness, introduced for that purpose, that his conduct toward the wife in the presence of such witness was kind and affectionate; but it was not error for the trial court to exclude as incompetent the testimony of a witness that, judging from what he had heard the defendant say, the feelings of the latter toward his wife were kind; such testimony being merely hearsay evidence of the self-serving declaration of the defendant.

3. Homicide—Proof of Declarations of the Defendant Made to His Wife in the Hearing of a Third Person—When Competent.—Testimony of a third person who overheard the defendant make to his wife, whom he a few months later killed, certain statements conducing to show him in fault with respect to the cause of their separation, was properly allowed to go to the jury as indicating the state of his feelings toward the wife; it being made to appear that what the witness then overheard the defendant say was not a detached portion of a conversation, but all that was said by him in regard to the matter with reference to which he at the time expressed himself.

4. Homicide—Reversal of a Judgment in a Criminal Case—Not Authorized on Account of the Admission of Incompetent Evi-

dence Not Prejudicial.—Error of the Circuit Court in admitting incompetent evidence will not authorize the reversal of a judgment of conviction in a case of homicide, where its admission did not prejudice any substantial right of the defendant. Section 340, Criminal Code, only authorizes a reversal for an error of law apparent on the record if, upon consideration of the whole case, the Court of Appeals is satisfied that the substantial rights of the accused have been prejudiced thereby.

5. Homicide—Accidental Killing—Instructions.—Where in a case of homicide the only defense interposed is that the killing was accidental, and the accused himself so testifies, an instruction on the law of self defense should not be given. It is only necessary that the jury should be instructed upon the law of murder, voluntary manslaughter, involuntary manslaughter, accidental killing; and also on the subjects of reasonable doubt and presumption of innocence.

D. K. RAWLINGS, C. P. LYTTLE and D. Y. LYTTLE for appellant.

JAMES GARNETT, Attorney General, and M. M. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Daugh Cornett, was tried and convicted in the court below under an indictment charging him with the murder of his wife, Lucretia Cornett, and his punishment fixed by the verdict of the jury at imprisonment in the penitentiary for life. He has appealed. The homicide occurred October 21st, 1908, in Clay County, at the home of his wife's mother, Mrs. America Morgan.

Appellant and deceased were married about four years before her death and had lived together at the home of her mother until about a year before her death, when they separated for some reason unexplained in the record. It appears from the testimony of the appellant that shortly before the homicide a suit for divorce had been brought by him against his wife, but as the record of the divorce case was not introduced on the trial the grounds upon which it was sought do not appear in this record. One witness, Bowman, testified that on the morning of the day deceased was killed she received over the telephone information that she had been granted a divorce, but the testimony on this point was objected to, and as its incompetency is yet urged, it will be considered later on in the opinion.

The facts showing the homicide were as follows: The appellant and one Will Carter had for several months been engaged in the business of procuring photographs and other pictures for the purpose of sending them away and having them enlarged, and had spent the week prior to the killing at this work in Breathitt County; but on the morning of the day of the homicide they returned to Clay County to the home of Nathan Sparks, about one and a half miles from that of appellant's mother-in-law. Upon reaching the house of Nathan Sparks about noon appellant and Carter there ate dinner. Each of them had secured a half gallon of whiskey in Breathitt County, some of which they had at the house of Sparks. Both were considerably intoxicated and upon leaving Sparks' house Carter requested appellant to go with him to his home in Jackson County, three or four miles distant, for the purpose of assisting him to make out a list of the pictures they had gathered up, so that the order for their enlargement, together with the pictures, might be immediately forwarded to the concern for which they were working. Appellant, however, refused to go with Carter to his home, whereupon Carter left Sparks ahead of appellant and rode in the direction of the residence of Mrs. Morgan. Appellant soon followed Carter, riding in a gallop, and waving his pistol above his head. Upon overtaking Carter they had some further conversation in which appellant told Carter that he had changed his mind and would go with him to his home, but that he wished to go by Mrs. Morgan's to get his mail. There were a store, postoffice and several other residences near that of Mrs. Morgan. The postoffice was a separate building adjoining the lot upon which Mrs. Morgan resided. Deceased was the postmistress and when appellant and Carter reached Mrs. Morgan's they dismounted and appellant asked deceased for his mail. She left her mother's residence and went with him to the postoffice building for the purpose of giving it to him. Appellant took his saddle-bags from the horse and carried them into the postoffice. At that time Carter was standing in Mrs. Morgan's yard or porch engaged in a conversation with her granddaughter, Martha Morgan. Appellant and deceased remained in the postoffice for about forty-five minutes, no one else being with them. At the end of that time a shot was fired in the room and deceased immediately ran from the

building to her mother's residence. She was shot through the head, the ball having entered below her right eye and going out at the base of the brain on the opposite side of the head. When she reached her mother's house blood was gushing from the wound and also from her mouth and nose. After shooting deceased appellant rushed from the postoffice, leaving his coat and saddle bags therein, but carrying with him his pistol, which he fired twice from the rear of the postoffice; one shot being fired in the direction of Mrs. Morgan's house. After running a considerable distance from the postoffice and through a cornfield and woodland in the rear of it, appellant finally reached the home of Link Clark, where he stopped long enough for Clark to go to the postoffice and bring him his horse, saddle-bags and coat, upon receiving which he left Clark's and went to his uncle's, Id. Cornett's, where he arrived about eight o'clock at night. On the same night he left his uncle's and proceeded to Bell County where he remained with some of his kindred for about a month, and then went to Oklahoma. He remained in Oklahoma about two years and went from that State to Fresno, California, where he was arrested in the latter part of 1912, and brought back to Clay County, Kentucky, to be tried for the murder of his wife. While in Oklahoma and California appellant went under the assumed name, Joe McKnight.

The shooting of appellant's wife occurred about two o'clock, p. m., and she lived nearly two days after the shooting, but became speechless about eleven o'clock, p. m., and remained so until her death. Between the time of the shooting and eleven o'clock she, however, repeatedly told what occurred in the postoffice during the interview between appellant and herself, and also how the shooting occurred. There is a contrariety of evidence as to what she said on this subject. According to the testimony of the numerous witnesses introduced for the Commonwealth her version of the shooting made it apparent that it was premeditatedly and maliciously done by appellant, following a threat to kill her and himself; while almost an equal number of witnesses introduced in behalf of appellant testified that she said the shooting was accidentally done by appellant; but after a careful analysis of all the testimony on this point we find her statement to have been, in substance, as follows: That when appellant went with her into the post-

office she discovered that something was wrong "and bad wrong" with him, that she became afraid of him and expressed a purpose of returning to her mother's house, but that he refused to permit her to do so; that she attempted to attract the attention of her niece, Martha Morgan, who was on the porch of her mother's residence talking to appellant's companion, Carter, by motioning to her, but, being detected in this attempt by appellant he said he would kill the first one who went out or came in at the door. She then tried to attract the attention of a man driving by with a load of coal, but was afraid to call to him. Still in fear she turned to appellant and, to use her language, "began to talk good to him" to prevent his doing her any harm. She even attempted to get away from him and to her mother's house by telling him that she had baked a fine cake and wanted to go and bring him a piece of it, but he refused to let her do so. She then told him that she had been washing all day and was tired and would like to sit down, whereupon he told her to sit down and she did so. While thus sitting in a chair and with her eyes turned toward her niece, still hoping to attract her attention, she was shot by appellant, but was unable to tell just how the shooting occurred, because she was not at the time looking at him.

Even down to the time she became speechless, she seemed greatly distressed because afraid that appellant would kill himself. It is apparent from what she said in the repeated statements made by her that she did not desire that appellant should be punished, and, though declaring that he had killed her for nothing, she also said that she would not hurt a hair of his head and that she did not desire him to be hurt.

It is fairly apparent from the evidence that the deceased at the time of making the statements referred to believed her wound to be fatal, that death was certain, and that she had but a short time to live; proof of same as her dying declaration was, therefore, properly admitted. Arnett v. Commonwealth, 114 Ky., 591; Commonwealth v. Griffith, 149 Ky., 405; Biggs v. Commonwealth, 150 Ky., 675.

The appellant made the defense that the shooting and killing of his wife was accidental. According to his version of the matter, after entering the postoffice he and the deceased had an agreeable conversation, at the end of which he took a bottle of whiskey from his saddle-

bags and induced her to take a drink therefrom; that upon replacing the whiskey in his saddle-bags he discovered he had put it in the pocket containing his pistol and, fearing that the bottle would be broken upon the pistol, he removed the pistol from the saddle-bags for the purpose of placing it in the opposite pocket thereof; that at that time he was standing with one foot upon the round of a chair, having the saddle-bags across his leg, and that in attempting to place the pistol in the opposite pocket of the saddle-bags his foot slipped from the round of the chair to the floor and to prevent the saddle-bags, bottle of whisky and pistol from falling to the floor he inadvertently grasped the trigger of the pistol in such a manner as to cause the weapon to go off and in that way shot his wife. He admitted that he immediately left the room without speaking to or attempting to assist his wife, although he saw that she was shot; and that he fled without his coat and saddle-bags and ran from the premises with the pistol in his hand, but gave as his reason for so doing, that he heard some one call Bowman, his wife's brother-in-law, and was afraid Bowman would kill him. He also admitted that after leaving the postoffice and before reaching the cornfield in the rear thereof, he fired his pistol twice, claiming, however, that this was done to prevent pursuit.

In this connection it should further be stated that, in support of his claim that the shooting of his wife was accidental, appellant testified that the shot from the pistol which struck her also inflicted upon him a wound where the ball passed between two of the fingers of his left hand; and he proved by one or two witnesses who saw him at the house of Sparks, shortly before the shooting, that his hand was then unwounded, and by his companion, Carter, that when they arrived at the postoffice, there was no wound upon his hand; also by Link Clark that his hand was wounded and bleeding when he got to his residence. It is the contention of the Commonwealth that this wound was not received by appellant at the time his wife was shot, but was caused, either purposely or accidentally, by one of the two discharges of the pistol made after the shooting and as appellant was escaping from the premises. It is not contended, however, that the record furnishes any evidence to support this theory; nor does it furnish any evidence, other than that of appellant's own statement and the fact that

the wound on his hand was not seen until after the shooting of his wife, to sustain his claim that the wound was accidentally inflicted by the same shot which wounded and killed his wife.

In view of the foregoing facts thus briefly outlined, we are unable to say that appellant's contention that the verdict is flagrantly against the evidence, is sustained by the record; and there is even less ground for saying that there was no evidence to support it. That the evidence was very conflicting can not be gainsaid, but it is not our province to pass upon the issues of fact further than to determine whether there was any evidence to support the verdict. Vowels v. Commonwealth, 83 Ky., 193; Patterson v. Commonwealth, 86 Ky., 313; Green v. Commonwealth, 26 R., 1221.

Appellant complains of the rejection by the trial court of certain evidence offered in his behalf, and of the admission of alleged incompetent evidence in behalf of the Commonwealth. The evidence, the rejection of which is complained of, may be found in the testimony of William Carter. The question asked Carter by appellant's counsel was:

"Do you know what the state of feeling was on his part toward his wife, from what he would say about it?" Counsel for the Commonwealth objected to the foregoing question. The objection was sustained by the court, to which ruling of the court appellant excepted.

By the court: "He may tell what the state of feelings were if he knows."

Question by attorney for defendant: "Can you tell, then, what was the state of feelings of the defendant toward his wife and his wife's toward him."

Answer: "I don't know only from what he said."

Question: "From what he said what was the state of his feelings." Counsel for the Commonwealth objected to the foregoing question. The objection was sustained by the court, to which ruling the appellant excepted.

Whereupon counsel for appellant said: "Defendant avows that if the witness was permitted to answer the foregoing question he would state that, from what defendant had always said to him, his feelings were good and kind toward the deceased."

The incompetency of the foregoing question is manifest. The answer, if given as shown by the avowal,

would only prove by hearsay a self-serving declaration
of the appellant, which rendered it clearly inadmissible
for any purpose. The witness had previously stated
what he had observed of the conduct of the husband and
wife toward each other during the period of their sepa-
ration, and that on several occasions they seemed to
be friendly toward each other. One of the occasions
referred to by the witness was at a church or a singing
school, where they happened to meet, and he then saw
them look at each other and smile in a friendly way. If
asked the question the witness might have been allowed
to state that, judging from what he had seen of them after
their separation, each seemed to feel kindly toward the
other; but the state of appellant's feelings toward his
wife could not properly be shown by the testimony of
the witness, as to what he had heard him say about
her during the separation and in the absence of deceased.

Appellant complains of the admission of the state-
ments of Mary Sparks as to a conversation btween ap-
pellant and deceased which occurred during their sepa-
ration and was overheard by her. The witness was
asked: "Before you heard about that (the death of de-
ceased) did you ever hear Daugh Cornett make any
statement in your presence to your aunt, Lucretia Cor-
nett?

"Answer: "Well, he never made any statement in
my presence, but I heard him say one night, after they
were separated, he came in there and was talking to her
and I went around the door and heard him say to her,
'I am the meanest man you ever looked in the face of. I
am as mean right now as my old daddy who is right now
in hell.' And that was after the separation."

We find no error in the admission of this evidence.
If it had been made to appear that what the witness
heard was merely a part of a conversation between ap-
pellant and deceased and that there were other things
said by them or him in the same connection which she
did not hear or could not remember, there would be some
ground for holding it incompetent; but what she testi-
fied to was all that was said by appellant, and it was com-
petent, as tending to show that his relations
with and feelings toward his wife were not as
agreeable and affectionate as was claimed by him
and the witness Carter. It was the province of
the jury to say whether this statement of ap-

pellant, overheard by the witness, together with that of another witness, that appellant threatened to kill him if he again saw him with deceased, and the dying statement of the latter that at the time of the shooting and previously, he threatened to kill her, showed such jealousy or ill-will on his part toward her, as to supply a motive for the killing.

Appellant also complains of the admission of so much of the testimony of the witness, R. H. Bowman, as related to a conversation over the telephone in his presence between deceased and one Bije Hampton a few hours before the homicide, in which she received information that a divorce had been granted to her or to appellant in the suit brought by the latter for that purpose. As according to the admission of the witness the only knowledge he had on the subject of the divorce was what deceased told him after her conversation with Hampton over the telephone, so much of his statement as related to what she told him was mere hearsay and incompetent; for which reason it should have been excluded by the court. In view, however, of appellant's admission while testifying, that he had sued deceased for a divorce before the homicide, and his uncontradicted statement that he did not then know whether a divorce had been granted in the case, and of his further testimony that deceased, immediately before the shooting, expressed her willingness to return to him and remove with him to another State, we are unable to see that the failure of the trial court to exclude the evidence in question was prejudicial to any substantial right of appellant, and this being so, the judgment should not be reversed on account of its improper admission.

Few cases are tried without the commission of some error on the part of the court or jury, but section 340, Criminal Code, only authorizes a reversal for an error of law apparent on the record, if, upon consideration of the whole case, the court is satisfied that the substantial rights of the accused have been prejudiced thereby, and this error is not of that character.

In our opinion appellant's complaint of the instructions is not well founded. They advised the jury, in substantially correct language, upon the law of murder, voluntary manslaughter, involuntary manslaughter and accidental killing, as well as on the subjects of reasonable doubt and presumption of innocence. Except num-

ber two, as to voluntary manslaughter, they substantially follow the instructions approved by us in the similar cases of Brown v. Commonwealth, 122 Ky., 626; Ewing v. Commonwealth, 129 Ky., 237; Hunn v. Commonwealth, 143 Ky., 143; McGeorge v. Commonwealth, 145 Ky., 540. Instruction two, to which appellant particularly objects, in advising the jury in what state of case a verdict for voluntary manslaughter would be proper, omits the elements of sudden heat and passion or sudden affray, commonly employed in defining manslaughter, and authorized appellant's conviction for that crime, if the shooting and death of the deceased was caused by his reckless or grossly careless handling or discharge of the pistol, when he knew it was dangerous to life if used in the way he used it. Ordinarily the omission from such an instruction of the element of sudden heat and passion, or sudden affray, would be improper, but in this case the omission could not have been prejudicial to the appellant as his defense rested wholly upon the claim that the killing was accidental and he testified that there was nothing said or done by deceased at the time of the shooting to anger or provoke him.

It is insisted for appellant that there should have been an instruction on the law of self-defense. In view of appellant's defense of accidental killing, this contention is without force. He testifies that there was no difficulty between himself and wife at the time of or previous to the shooting, and the dying statement of the latter corroborates his testimony to that extent.

Our view of this contention of the appellant is expressed in the following excerpt from the opinion in Foster v. Commonwealth, 112 S. W., 563 (not elsewhere reported):

"It has been ruled in several cases that, where no eye witness to the homicide testified, it is the duty of the court to give the jury the law applicable to manslaughter and self-defense, as well as murder. The cases so holding were reviewed in Best v. Commonwealth, 124 Ky., 747; and it was there held, after fully considering them, not to be necessary to give an instruction as to voluntary or involuntary manslaughter or self-defense, unless there was some fact or circumstance developed on the trial upon which such instructions, or one of them, might be predicated. In the case before the jury there is no room or place for an instruction, except upon the subject

of murder. There is not a word of proof, or a single circumstance, upon which an instruction as to voluntary or involuntary manslaughter or self defense could be rested. It would be absurd to hold in a case like this that the trial court should have given instructions upon subjects concerning which there was no evidence whatever. The appellant, if guilty at all, was guilty of murder.''

Being convinced by the record before us that appellant had a fair trial, the judgment is affirmed.