## Mason v. Commonwealth.

(Decided May 19, 1925.)

### Appeal from Kenton Circuit oCurt.

1. Homicide—Whether Shooting was Murder, Voluntary or Involuntary Manslaughter, or Done in Self-defense, Held Properly Submitted to Jury.—Whether shooting was murder, voluntary or involuntary manslaughter, or done in self-defense, held properly submitted to jury.

2. Homicide—Evidence of Threats of Defendant Held Substantive Evidence Not Requiring Admonition to Jury.—Where, in a murder prosecution, the proof was conflicting as to what was done at time of shooting, evidence of defendant's threats against deceased was substantive evidence to show defendant's condition of mind and intent, and not within rule requiring admonition to jury as to purpose.

JOHN T. MURPHY for appellant.

FRANK E. DAUGHERTY, Attorney General, and ORIE S. WARE for appellee.

Opinion of the Court by Commissioner Hobson—
Affirming.

Joe Mason was indicted in the Kenton circuit court
for the murder of Alma Parks. He was found guilty of
manslaughter and his punishment was fixed at twenty
years in the penitentiary. He appeals.

Joe Mason and a number of other negroes were liv-
ing in camp cars on a side track of the Southern Railway
Company in Ludlow. Parks and his wife lived in one
car, which was divided into three rooms; one was the
entry, one the kitchen and the other a sleeping room. The
car was thirty feet long. About a hundred feet from this
car and on the same sidetrack, was a like car in which
Joe Mason lived.

The proof for the Commonwealth showed these facts:
On June 2, 1924, about 3:00 p. m., Mason, who had been
in another car near the Parks car, went to his own car
and then went down to the Parks car, where he found
John Parks, the husband of Alma, feeding his chickens
ten or fifteen steps from his back door. Parks had erected
steps at his front door and had also erected at his back
door a shed or porch with steps leading down to the
ground from it. Mason walked up to Parks and said,
"Say Parks I came down to see about some lies." Parks
said he knew nothing about any lies and Mason started
away. Alma Parks then came up and laid some packages
on the porch; Mason, when he saw her, came up to her
and said something to her, she said she did not know
anything about it. Then Mason pulled his pistol and as
she ran up the steps to the back door he shot at her. Parks,
when he heard the conversation between Mason and his
wife, approached Mason with the pan in his hand from
which he had been feeding the chickens; Mason, as he
approached, shot him in the leg, he fell and Mason shot
him again in the hip and struck him over the head with
his pistol. Mason then went around the Parks car and
forced his way in the front door by surging against it
until the staple gave away. Alma Parks screamed,
begged Mason not to kill her, several shots were fired by
Mason in the car, one of which struck her about the left
breast and penetrated the heart, another passed through
the left arm between the shoulder and the elbow. Mason
then left the car, looked for Parks who had crawled be-
hind a shed, and not finding him, went away. Parks was
not armed in any way nor was Alma Parks. This was

the testimony of John Parks and it was confirmed by several other witnesses. There was also testimony to the effect that Mason had made threats to kill Alma Parks for some months, the last being about a week before the homicide. This threat had been told to John Parks but he said that Mason wouldn't hurt anybody.

On the other hand, the defendant testified that he and the Parks were the best of friends; that he was on his way to the city and as he passed the Parks car spoke to Alma Parks, and while he was talking to her John Parks came running up from the rear and said, "I will kill you." He backed away some eight or ten feet from Parks who then shot at him, shooting him through the finger. Mason had by this time backed to the steps of the car, and Parks was so close to him that he struck Parks over the head with his revolver. Alma Parks in the meantime had run into the car and as Mason backed toward the door she grabbed him by the collar with one hand, jerked him in the doorway and struck him over the head with a glass vase. She then reached for a skillet and in the struggle between them his pistol, which he had in his hand, went off without any intention on his part to shoot her. Mason also proved by a number of witnesses that he was a man of good character and that his general reputation for peace and quiet was good.

The court in addition to the instruction on murder gave the usual instructions on voluntary and involuntary manslaughter and self-defense. It is complained that these instructions should not have been given. But if these instructions had not been given, under the testimony of the defendant, he would have just cause for complaint. If the facts stated by him were true he and Parks and wife were friends; he was simply passing the car casually; was attacked by Parks without cause and in the struggle which ensued, in which the wife participated no less than Parks, the woman was shot without any intention on his part to hurt her. It was clearly a question for the jury under the facts as the defendant stated them, in view of all the other evidence, whether the shooting was murder, voluntary manslaughter, involuntary manslaughter or done in self-defense. The defendant showed that Alma Parks was a large, strong woman, weighing two hundred and fifty pounds, and while his testimony as to the facts is not sustained by the weight of the evidence or the circumstances shown, the question was prop-

erly submitted to the jury. Cornett v. Commonwealth, 156 Ky. 795; Vaughn v. Commonwealth, 204 Ky. 229, and cases cited.

It is also complained that the trial court should have instructed the jury during the trial as to the purpose of the testimony relating to threats and should have admonished the jury that it was introduced only to show motive and malice and not as substantive proof of his guilt. Where testimony is offered which is only competent to contradict a witness, the jury should always be instructed that such testimony is only competent for the purpose of impeaching the witness and not as substantive proof of the facts stated. But this rule has never been applied to proof of threats made by the defendant. Such evidence is competent as substantive evidence in the case to show his condition of mind and his intent in what he did. It is substantive proof, for a man's purpose in a transaction may always be considered in determining what he did where the proof is conflicting as to what was done.

On the whole case, we see no error to the prejudice of the defendant's substantial rights.

Judgment affirmed.