## Owens v. Commonwealth.

(Decided November 12, 1929.)

BEN F. THOMPSON for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Affirming.

This is a prosecution under section 1155 of the Kentucky Statutes as finally amended by chapter 17, page 65, of the Session Acts of 1922, and which is now section 1155 of the 1928 Supplement to Carroll's Kentucky Statutes, and makes it a felony for carnally knowing a female over 16 years of age and under 18 years of age by a male who is over 21 years of age. Upon his trial in the Carter circuit court under the indictment so accusing him, defendant was convicted and punished by confinement in the penitentiary for two years and one day, and on this appeal he seeks, through his counsel, a reversal of the judgment upon a number of grounds argued in his brief, but all of which, except one, nowhere appear in the record.

The prosecutrix was Zelma Jones, the daughter of a school teacher living near Olive Hill, Ky., but she attended the high school in that town. She had a female acquaintance by the name of Loraine Criswell who was only 14 years of age, and on the late afternoon of November 23, 1927, the two girls, with the defendant, Emerald Stamper, and Huff Hammonds, got in an automobile and drove out a public road from Olive Hill for some distance, when defendant and prosecutrix got out of the automobile and went down or up the road out of sight of the other occupants of the automobile, and they were gone some 15 or 20 minutes. The parties then drove back to Olive Hill where they left Hammonds, and the four others then went to a country schoolhouse, at which place the same two parties went behind it and remained away from the other two for about 30 minutes, and then the four spent the night in the automobile parked on the school ground. They then went into Boyd county and did not return to Olive Hill until the following Saturday morning, the trip having been begun on the previous Wednesday evening.

The prosecutrix testified that the offense was committed on both of the occasions when she and defendant left the others as above described. The Criswell girl corroborated the prosecutrix, except that she was not present when the offense was committed for the manifest reason that the participants were out of her sight. Defendant admits everything that those two witnesses said, except he denied the commission of the forbidden act. Shortly after the happening of the described occurrences, Stamper addressed a letter to the prosecutrix in which he depicted the shame and disgrace that would befall her and her family if the matter became public, and the writer implored her to do something to prevent such publicity, and which resulted in appellant's attorney preparing an affidavit for the prosecutrix to sign and in which she stated that defendant had not violated the statute at any time during the automobile escapade, but she did not state in that affidavit that any of the other things did not happen as she and the Criswell girl testified at the trial, and all of which defendant admitted in his testimony. She explained in her testimony why she made that affidavit, which she testified was done pursuant to the urgent request of Stamper and others who were present at the time and participated in its procurement. In giving the reasons why she did so, after explaining, she testified that: ''Emerald Stamper wrote me a letter and told me to come down there and said I would be disgraced if I went to court, and if I would make this affidavit no one would know anything about it. . . . He said people would not have anything to do with me if I went to court and I would be disgraced.'' And none of those present, whom the witness named, appeared at the trial to contradict that explanation.

The court admonished the jury that the affidavit was admissible only for the purpose of contradicting the prosecutrix and which was clearly proper. Stamper did not appear at the trial, nor did Hammonds, and the only testimony introduced by defendant was that given by himself, except he read an affidavit filed by him for a continuance on account of the absence of Stamper, in which it was stated that if the latter was present he would testify that the defendant did not commit the offense, but he did not incorporate in that affidavit any denial by the absent witness of the automobile trip as described by the prosecuting witnesses, nor anything else that occurred during

that time, except that defendant did not violate the statute under which he was indicted.

There was no effort made to procure the testimony of Hammonds, either through an affidavit for a continuance or otherwise, and under the testimony as thus presented it is argued with apparent seriousness, not only that the verdict is flagrantly against the evidence, but that a directed verdict of acquittal should have been given. The contention is unsupported by any cited case from this or any other court, and it is so contrary to the settled rule of criminal practice as not to deserve lengthy discussion. Numerous are the cases to the effect that contradictions in testimony are to be reconciled by the jury, and unless the verdict is so contrary to the proof heard on the trial as to clearly indicate passion and prejudice on the part of the jury the court is not authorized to disturb it. The only contradiction of the prosecuting witness in this case is the testimony of defendant and the contradicting affidavit made by her under the circumstances above outlined.

The denial by defendant of his guilt is entitled to but little credence when he admits all of the other facts relating to the automobile drive. He was a married man and was away from his home for three nights. He admits separating from the other members of the crowd on at least the two occasions testified to by the prosecutrix, during which time he and she were alone and out of sight of the other members and in the nighttime, and to believe his denial of what the prosecutrix said did happen on those two occasions would require a degree of credulity not possessed by the ordinary individual. Neither do we attribute much, if any, weight to the affidavit made by the prosecutrix under the circumstances detailed. She was a young girl, and the full effect of her conduct did not dawn upon her until it was over with, and under the circumstances she was induced to make the affidavit for the purpose of screening her reputation. At any rate, the weight to be given to that contradiction was a question to be solved by the jury, and under the well-settled rules of criminal practice the court is not authorized to disturb its conclusion that the affidavit was false and that the testimony given upon the trial was the truth.

Counsel indulges in much elaboration in his brief with reference to a conspiracy whereby the entire prose-

cution was a fabrication and was set on foot by the prosecutrix and her father for the purpose of extorting money from the appellant, and for that reason the conviction should not be allowed to stand. If any such facts existed, the time and the place where they would have been relevant and proper was upon the trial of the case, and not for the first time injected by counsel in his brief. It requires no argument to show that such foreign matter, contained only in brief, will receive no consideration by this court.

It is next insisted in brief that it was the duty of the court to give the whole law of the case, and which is true, and a number of cases are cited in support of that rule; but nowhere is it claimed that the court failed to give the whole law of the case, nor does counsel point out any instruction to which his client was entitled, under the evidence, that the court did not give.

Lastly, it is contended that the commonwealth's attorney in his closing argument to the jury made improper and prejudicial remarks to which defendant excepted. The remarks of the attorney so complained of were, that "Thompson (attorney for the defendant) had received the money of the Commonwealth's witness, Criswell, said she had received for her part of the ride which was taken on the night or time the defendant was accused." That excerpt is the only portion of the argument of the commonwealth's attorney contained in the record, the objection to which was not passed on by the court. But, waiving that point, we are unable to discover in what connection the statement was employed, and if it was done for the reasons stated by appellant's counsel in his brief, then we are unable to see wherein it was prejudicial to defendant's rights.

The witness Loraine Criswell was asked by counsel for defendant this question, "How much money did you get out of your trip with Emerald Stamper?" to which she answered, "One thousand dollars," and it is stated in brief that the commonwealth's attorney in the statement objected to, intended to and did say that the fee of defendant's counsel consisted of a portion of that $1,000. Perhaps the statement was irrelevant and was not a proper deduction from anything appearing in the case, but surely it could not prejudice the rights of defendant. On the contrary, its tendency was to produce the conviction that the Criswell girl wanted defendant acquitted and was employing counsel to defend him, and, if true,

it would have a tendency to weaken her testimony as a prosecuting witness. After all, the essential question in the case was whether defendant was guilty of the crime with which he was accused, and the fact that this, that, or the other one hired counsel to defend him could have but little, if any, bearing on that issue.

A painstaking reading of the record has convinced us that the trial court committed no prejudicial error against the substantial rights of the defendant, and the judgment is affirmed.