## Farmer v. Commonwealth.

(Decided June 6, 1930.)

FORESTER & CARTER for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellant, Cleve Farmer, was tried in the Harlan circuit court upon an indictment charging him with murdering Orville Farmer, and he was convicted of voluntary manslaughter and punished by confinement in the penitentiary for a period of five years.

The sole ground urged on this appeal for a reversal of the judgment is that the trial court erred in failing to give to the jury an instruction defining defendant's right to defend his home.

Briefly stated, the facts are these: Cleve Farmer and the deceased, Orville Farmer, were brothers-in-law; the former having married the latter's sister. A few minutes before the killing appellant and deceased were at the home of Artie Farmer, which was a short distance from appellant's home. Artie Farmer testified that both appellant and deceased were intoxicated and that there was no evidence of ill feeling between them while they were in her home. Deceased made some eggnog, which he and appellant drank, and they then left her home

ostensibly for the purpose of going to appellant's home. She stated that deceased wanted to go through the field, but appellant said that "he was too drunk" and insisted that they go by the road. Appellant denies that he was intoxicated or that he drank any intoxicating liquor at the home of Artie Farmer. He testified that the deceased, while they were at Artie Farmer's home, made some reference to the fact that appellant knew deceased was operating a moonshine still and threatened to kill him; that he became frightened and left and deceased followed him to his home. After he entered his yard he said to deceased, "Don't come in that gate, I am at home now." Deceased replied, "By God, I am coming," and entered the yard. Appellant's eleven year old daughter ran out into the yard and handed him a shotgun. He walked around the house and called his wife (deceased's sister), who ran up to deceased and endeavored to quiet him. Deceased pushed her out of the way, reached his hand toward his pocket, accompanied by a threat to kill appellant, when the latter raised his shotgun and fired. Appellant is corroborated by his eleven year old daughter as to what occurred after he arrived in the yard.

The commonwealth introduced several witnesses who were a short distance from appellant's home at the time of the homicide. They testified they heard some one scream which attracted their attention, and they saw appellant standing in his yard with a shotgun in his hands. Deceased was standing 15 or 20 feet from appellant. They saw appellant raise his gun and fire; the deceased fell and appellant left the scene. They immediately went to the assistance of deceased and carried him onto the porch of appellant's home. No weapon was found on or about the deceased. None of the witnesses who testified for the commonwealth saw the deceased make any movement immediately before he was shot that indicated he was reaching for a gun, though most of them testified that he was standing partly behind a tree and the upper part of his body was not in view. One witness, however, testified that he was standing with his hands at his sides when he was shot and that he was making no demonstration of any kind.

Appellant, his wife and daughter, and the deceased were in appellant's yard when the killing occurred. It is not claimed that the deceased was attempting to enter the house or that any one other than appellant was in

danger. The appellant's own testimony showed that he shot the deceased to prevent the deceased from shooting him. There is no evidence of any felonious design upon the residence as such. It is well settled that a person may resist any attempt of another to commit a felony upon or in his dwelling house and has the right to defend his home against an unlawful invasion and defend himself and those within it against violence. Hendrickson v. Commonwealth, 232 Ky. 691, 24 S. W. (2d) 564; Noe v. Commonwealth, 227 Ky. 578, 13 S. W. (2d) 763; Sawyer v. Commonwealth, 227 Ky. 435, 13 S. W. (2d) 267; McKinney v. Commonwealth, 82 S. W. 263, 26 Ky. Law Rep. 565. However, appellant was not entitled to an instruction upon this theory, for, under the undisputed evidence, deceased at the time of the homicide was not attempting to commit any felony upon or in the dwelling house of appellant. Appellant testified that he killed deceased because the latter had threatened, and was at the time seeking, to take appellant's life. His sole defense was that the killing was done in defense of his person, and this theory was fully and correctly covered in the instruction on self-defense which the court gave. The proximity of the house appears to have had nothing to do with the killing.

The facts of this case are very analogous to those of the case of Winchester v. Commonwealth, 210 Ky. 685, 276 S. W. 575, 576, in which the court held that the defendant was not entitled to an instruction on the defense of his home. In the course of the opinion it was said:

"There was no evidence that Cogar had any hostility to any one at Winchester's home except him, or intended violence to any one else. . . . The defendant himself testified that he shot the deceased because he was advancing on him with the knife and he believed himself in danger. He was then outside of the house. According to all the evidence for the defendant, Cogar was attacking Winchester, and not the house. The court therefore concludes that no substantial right of the defendant was affected by the failure of the court to give the defendant an instruction on the defense of his home."

In Carroll v. Commonwealth, 221 Ky. 557, 299 S. W. 183, the distinction between the right of an owner to protect his premises from a mere trespass by another and

his right to protect his dwelling from an assault with the intent to forcibly enter it for an unlawful purpose was pointed out. Also see White v. Commonwealth, 225 Ky. 596, 9 S. W. (2d) 720; Thomas v. Commonwealth, 195 Ky. 623, 243 S. W. 1.

Here there was no testimony to warrant the court in submitting to the jury the issue as to whether or not the appellant killed Orville Farmer in the defense of his home, and there being no claim that any other error was committed, the judgment is affirmed.