## Ritchie v. Commonwealth.

(Decided April 22, 1932.)

DANIEL W. DAVIES for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Thomas Ritchie, and John Tucker were jointly indicted for the murder of Ray Baldwin. Tucker was never apprehended, but Ritchie was arrested in Ohio shortly after the homicide, and on his trial was convicted of manslaughter and sentenced to a term of 15 years in the penitentiary.

The only grounds urged on this appeal for a reversal of the judgment are: (1) The verdict is flagrantly against the weight of the evidence; and (2) the court erred in its instructions to the jury.

Appellant and deceased were engaged in the illicit liquor business in Newport, Ky. For some time prior to April 30, 1931, the date of the killing, Robert Welch had been engaged in the unlawful business of selling intoxicating liquors in the territory near the intersection of Chestnut and Isabella streets in Newport. Welch and some of his agents were convicted of a violation of the Federal Prohibition Law, and Welch was sentenced to a term in the federal prison. Shortly thereafter Ray Baldwin moved into the territory formerly controlled by Welch and began selling moonshine whisky. Appellant lived in a houseboat on the Ohio river in Covington, Ky. There was evidence from which it might be inferred that appellant stole a load of liquor from the deceased on the day before the killing. On the other hand, the appellant testified that on Saturday, April 25, 1931, he sent 31 gallons of liquor to Newport by John Tucker, and that Baldwin stole it from Tucker. He went to Newport, saw Baldwin, and asked him if he had it. Baldwin had sold all but 11 gallons which he returned to appellant. A few days later Baldwin came to the houseboat where appellant was living and accused him of selling whisky to his (Baldwin's) customers. Appellant replied, "You haven't any more customers than anybody else; go out and drum up some more trade." He learned later that Baldwin was threatening to kill him.

Shortly after dark on the evening of the homicide appellant and John Tucker in separate automobiles started to Chestnut and Brighton streets in Newport to obtain some sugar. As they passed along Isabella street, appellant saw Baldwin seated on the steps of a restaurant, and, as he turned into Chestnut street, he observed that Baldwin was following him in an automobile. Instead of going to Brighton street, he and Tucker turned into Patterson street, and evaded the deceased. Tucker gave him a pistol which was a .38 caliber, and they returned to Isabella street. Appellant claimed that he was going to the home of his mother. They again passed in front of the restaurant where he had seen Baldwin a few minutes before, and Baldwin was in his automobile, which was parked almost in front of the restaurant. Appellant drove alongside Baldwin's car and stopped. The rear end of his car was even with the front wheels of Baldwin's car. Tucker stopped his car just back of Baldwin's car, got out, and stood on the sidewalk. Appellant got out of his car and walked over to the car in which Baldwin was seated. William Azbill was sitting in the car with Baldwin, and, as appellant approached the car, Baldwin said to Azbill, "Get out of the machine, kid, there's going to be trouble." Azbill got out of the automobile and started into the restaurant, but he heard appellant say, "I heard you said I was afraid to take another load of your whisky," and Baldwin replied, "I am afraid you cannot take this load." Appellant then asked Baldwin "if he wanted to shoot it out." Immediately thereafter three shots were fired, but Azbill was unable to state who fired the first shot. John McCann, who was sitting on the front steps of the restaurant at 519 Isabella street about 12 or 15 feet from the car in which deceased and Azbill were sitting, testified that two cars drove up, the occupants jumped out, and one of them approached deceased and exchanged a few words with him when the shooting began. He was unable to state who fired the first shot. Thos. J. Connelly, who was in his store about 70 feet away, heard the shooting and saw the flashes from appellant's gun. He testified that the gun which was in the hand of the man on the outside of the car was fired first. Several witnesses testified that they heard five shots, and that the first three were louder than the last two. One of appel-

lant's own witnesses testified that a pistol such as appellant's, which was a .38 Special, would make a louder report when fired than a .45 caliber pistol on account of the manner in which the shells were loaded. The deceased was wounded in three places, one bullet passing through his abdomen, and he was dead when the police officers arrived. A .45 caliber pistol owned by the deceased containing two empty shells and four loaded shells was found on the running board of his car. One bullet fired from this gun passed through the door of the automobile and struck appellant in the side, inflicting a slight wound. Appellant claims that this shot was fired before he drew his pistol and shot the deceased.

The foregoing recital of the facts developed at the trial is a sufficient answer to appellant's contention that the verdict is flagrantly against the weight of the evidence.

This court will not disturb a judgment upon the ground that the evidence was insufficient to support the verdict unless the verdict is palpably and flagrantly against the weight of the evidence. We have frequently stated that, unless a verdict is so flagrantly against the evidence as to shock the conscience and lead unerringly to the conclusion that it was the result, not of deliberation, but of passion and prejudice, it must stand. Maggard v. Commonwealth, 232 Ky. 10, 22 S. W. (2d) 298; Owens v. Commonwealth, 231 Ky. 479, 21 S. W. (2d) 809; Mullins v. Commonwealth, 230 Ky. 624, 20 S. W. (2d) 442; Perkins v. Commonwealth, 227 Ky. 129, 12 S. W. (2d) 297; Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629. Tested by the rule announced in these and numerous other cases of similar import, the evidence is amply sufficient to sustain the verdict.

The sole criticism of the instructions is directed to instruction No. 4, which qualifies appellant's right of self-defense, and reads as follows:

"If the jury believe from the evidence in this case, beyond a reasonable doubt, that the defendant, armed himself with a pistol, deadly weapon, sought out the deceased Baldwin, for the purpose of engaging in a difficulty with him, for the purpose of killing or injuring the deceased. and did with intention of bringing on the difficulty for the said purpose

advance toward the deceased in a menacing manner and use insulting or provoking language to the said deceased, and did thereby bring on the difficulty in which said Baldwin was killed, and that defendant willingly entered into the conflict with the deceased, and willingly engaged in the same up to the time he fired the fatal shot that killed the deceased if they believe he did so, then and in that event the defendant could not justify on the ground of self-defense and apparent necessity as defined in instruction number three.''

It is insisted that this instruction is not authorized by the evidence. There was evidence from which the jury might infer that appellant armed himself and sought out the deceased for the purpose of bringing on the difficulty. It is conceded that bad feeling existed between them, but, notwithstanding this, appellant, after deceased had followed him, returned within a few minutes to the place where he had seen him, got out of his car, walked to where the deceased was sitting, and used language calculated under the circumstances to bring on a difficulty. The facts here are very similar to those in the recently decided cases of Saylor v. Commonwealth, 243 Ky. 79, 47 S. W. (2d) 736, and Pergram v. Commonwealth, 242 Ky. 465, 46 S. W. (2d) 780, in each of which an instruction similar to the one here complained of was approved.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.