## Hatfield v. Commonwealth.

(Decided June 9, 1936.)

ROY W. HOUSE for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

From a judgment on a jury's verdict finding Pearl Hatfield guilty of voluntary manslaughter and fixing her punishment at two years' confinement in the state reformatory, she appeals.

On a trial before a jury to establish her plea of self-defense she testified thus:

"The first I knew he came to the door and knocked and I asked who it was and he din't speak. I said: 'Tell who you are,' and he didn't speak and I went to the other side of the room and got the shotgun from the wall and come back to the door. I held the gun in my hand and said: 'Who is it?' And he said: 'This is me, Pearl, and I have the law with me.' I said: 'If you have the law with you, you can come in.' He said: 'The law is here with me.' When he said the law was with him I laid the gun on the foot of the bed and turned and opened the door and he stuck a pistol in first. He said: 'I have every one of you covered and the first one that moves I will kill him.' I commenced begging to him and telling him that nobody was going to hurt him and nobody had anything against him. He said: 'I have come here with the murder of three men in my heart.' He said: 'I am going to kill every one here.' When he said that he fired the first shot through the roof and he fired two more shots that close (indicating) to my little brother's head. He said: 'I have come here to-night for the purpose of killing you.' When he done that he swung the pistol toward me and I grabbed the shotgun and shot and run toward the door. I looked back and he had fell between the beds."

Her statement of the tragedy was corroborated by the testimony of her mother. They admitted the killing occurred at about 8:30 or 9 o'clock p. m. At the time of its occurrence two boys about ten and twelve years of age were present; one in bed asleep, and the other standing by and witnessing the killing. Neither of them was introduced as a witness. No other witness testified in her behalf.

To establish her guilt and overcome the evidence tending to show that in the killing she was acting in self-defense, the commonwealth proved that on the

evening before the killing, the deceased, Mose Hatfield, was at the home of Steve Isom and borrowed his horse to go to see his wife at the home of her mother. Isom loaned him the horse and it was returned some time during the next day. About 7 o'clock of the morning next after the night of the killing, the mother of the deceased, the coroner of the county, and the individuals summoned to serve as jurors at the coroner's inquest, and others, went to the home of Pearl Hatfield's mother in which she and her mother claimed the killing had occurred. It was one room, with two doors; one at the end and the other at the side. The door at the side opened at the foot of a bed. The deceased was lying on his right side with his head against the end door between two beds, his hair sticking out under the door; a pistol—"a 38 special"—was laying in his hand. Three of its chambers were empty and three contained loaded shells. There was no blood on the floor where he was lying or elsewhere in the room. A careful search was made for bullet holes in the roof, in the walls, and in the floor. No bullet holes were found anywhere in the room. A hole in the roof resembling a bullet hole was examined and it was "old," even if it were a bullet hole. Pearl Hatfield's mother was present a part of the time during the examination and an inspection of the interior of the room for the purpose of locating bullet holes, if any were to be found. She imparted the information that the deceased had shot his pistol twice and the balls had struck the stone arch to the fireplace. It (the fireplace), and the stone of which it was constructed, were examined by a number of witnesses and no indication of any bullet having struck the same was discoverable. The interior of the room was searched with a view of locating the bullets which she claimed had struck the stone arch or jam of the fireplace. No bullet was found in the room. The yard adjacent to the dwelling was searched and No. 12 gauge shotgun wads were found in the yard near the dwelling. The clothing and body of the deceased were examined; "there was a lot of mud on his clothing." A shotgun wound was on his body at about the "fork of the breast bone." "It ranged down several inches in his body," and "lodged above his right hip." On the night of the killing, a neighbor of Pearl Hatfield and her mother,

who resided near them, heard a shotgun fired and then two or three pistol shots. At the time he heard them he was unable to determine their direction from his home. The deceased was six feet, and Pearl Hatfield five feet and three inchs, high. No powder burn was found on the deceased's clothing or person. The commonwealth introduced the clothing worn by Hatfield when he was killed and further proved that Pearl Hatfield admitted killing him by shooting him with a shotgun. To establish a motive for the killing, it proved that the deceased had secured a warrant against her and others to require them to execute bond to keep the peace toward him.

With the evidence showing that Mase Hatfield was dead and her admission that she had killed him by shooting him with a shotgun, it cannot be said there was no evidence of her guilt. Her admission that she had killed him made it incumbent upon her to justify or excuse her act by evidence. The rule is, where there is any evidence, however slight, tending to show the guilt of the accused, the case should go to the jury. Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732.

The circumstantial evidence strongly tends to show that the killing did not occur as narrated by the accused and her mother, or in the room in which she, her mother, and the two boys resided.

The question of her guilt was one peculiarly within the province of the jury.

"We are forbidden from reviewing the evidence to determine if it justifies a conviction (Cornelius v. Com., 54 Ky. [15 B. Mon.] 539); nor is it our province to pass upon the facts other than determine whether there is any evidence to support the verdict (Cornett v. Com., 156 Ky. 795, 162 S. W. 112), unless the verdict is manifestly wrong or palpably against the weight of the evidence (Miller v. Com., 231 Ky. 527, 21 S. W. (2d) 840; Ritchie v. Com., 243 Ky. 479, 48 S. W. (2d) 1072), and, if there is any evidence affording grounds on which the jury's verdict might be sustained, it is considered neither wrong nor palpably against the weight of the evidence (Newsome v. Com., 240 Ky.

333, 42 S. W. (2d) 306; Barton v. Com., 240 Ky. 786, 43 S. W. (2d) 55; Tussey v. Com., 241 Ky. 91, 43 S. W. (2d) 351)."

Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 111, 94 A. L. R. 407.

Pearl Hatfield argues that she was entitled to have the jury instructed as to her right to defend the home. The accepted rule is, in a criminal prosecution, the instructions must be based on the evidence and given to suit the case in hand. Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14. It will be observed that according to the testimony of herself and mother, she shot the deceased and did so to avert her death at his hands, he at that moment having a pistol pointed at her. Accepting this version of the killing, she shot and killed the deceased in defense of herself and not of the home. It follows that she was not entitled to an instruction defining her right to defend the home.

Considering the evidence most favorable to the accused, and at the same time regarding these general rules, we find no grounds for reversal presented in the record or in her brief.

Wherefore, the judgment is affirmed.