## Rhodes v. Commonwealth

May 19, 1939.

R. S. ROSE and J. B. SNYDER for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Appellant, Harrison Rhodes, is appealing from a judgment by which he was sentenced to life imprisonment for the murder of Willie Middleton, also known as Willie Lankford, but most commonly called "Skinny" Middleton.

Appellant is a man 59 years of age and lived at Sunshine in Harlan County with his sister-in-law, Martha Rhodes. They both occupied the same room and on the night of the killing, August 8, 1938, Fannie Middleton, wife of the deceased, who was a daughter of Martha Rhodes and a niece of appellant, was spending the night at the home of her mother and had with her the young baby of herself and the deceased. The two women and the baby occupied one bed and appellant another bed in the same room. About 10 o'clock at night, the deceased was brought to this home by two of his friends in a drunken condition. They knocked on the door and, after some talk among the inmates of the house, the door was opened and deceased was permitted to enter. The two women both got up out of bed, but appellant remained in his bed. The deceased seems to have engaged in some drunken talk and, shortly after he came into the house, took the baby from his wife and, while holding the baby, very nearly fell. His wife then took the baby and after a little while things quieted down and the two women went back to bed. After the two women got in bed, the deceased lay down on the bed beside his wife for a few minutes. According to appellant, he then jumped up off the bed and started towards appellant's bed and said, "I'll cut your damned head off,"

and then threw himself down on appellant's bed and across his legs. When he did that appellant shot him in the back four times with a pistol which he had under his pillow. Appellant states that just before the deceased came in the door, he said he was the worse damned man in Harlan County, that the Middletons were all bad men and he was "one of them bad Middletons" and had already killed three people. The deceased's wife states that at the time the deceased got up from the bed beside her he said he was the worst damned Middleton that ever hit Harlan County and gritted his teeth and drew his fist back and went to appellant's bed, whereupon the shots cracked. The only eye witnesses to the killing were the two women, who testified in defendant's behalf. The testimony given by the three of them is very conflicting as to details and is such as to leave it doubtful whether or not the deceased had any real intention of doing any violence to appellant. This is evidently the conclusion reached by the jury.

Appellant contends that the court failed to give all the law of the case, and, particularly, that an instruction on defense of the habitation should have been given and that the instruction as given by the court was insufficient for that purpose. The instruction complained of is as follows:

"Although you may believe from the evidence to the exclusion of a reasonable doubt, that the Defendant shot and killed the deceased with a pistol so that he, William Lankford, died thereby, yet if you shall believe from the evidence at the time he did so he believed and had reasonable grounds to believe that he or Fannie Middleton or Martha Rhodes, or his house, was then and there in danger of death or some great bodily harm about to be inflicted on them, or some one of them, by the deceased, and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to so shoot and kill the deceased, in order to protect himself or Martha Rhodes, Fannie Middleton, or his house from such danger, real or to the defendant apparent, then you ought to acquit the defendant on the grounds of self-defense, or apparent necessity therefor, or the defense of another, or the apparent necessity therefor."

Apparently the court was intending by this instruction to instruct on the appellant's right to defend his

habitation, and the instruction is obviously insufficient for that purpose. The correct type of instruction along this line was prepared by this court in the case of Watson v. Commonwealth, 132 Ky. 46, 116 S .W. 287.

It is apparent, however, that the appellant, under the circumstances of this case, was not entitled to any instruction on his right to defend the habitation. According to his testimony, he shot the deceased solely and alone in self-defense. The deceased had been accepted as a guest in the home and, immediately prior to the killing, was lying on the bed beside his wife. Appellant was making no effort to prevent the deceased from entering his home and had no intention of ejecting him therefrom. The sole issue, therefore, raised by the testimony was whether or not the killing was done in self-defense. The defendant in a homicide case occurring in his home is not always entitled to an instruction on defense of the habitation, but only when the evidence authorizes such an instruction. Hatfield v. Commonwealth, 264 Ky. 721, 95 S. W. (2d) 562; Farmer v. Commonwealth, 234 Ky. 673, 28 S. W. (2d) 978; Commonwealth v. Girkey, 240 Ky. 382, 42 S. W. (2d) 513. Such parts of the instruction as attempted to instruct on defense of the habitation may be regarded as surplusage.

Appellant contends also that the instruction given should have contained an instruction embodying his right to kill the deceased in defense of the deceased's baby. This claim is so preposterous as to require no discussion. The baby was not in the slightest danger and no witness pretended it was. In a criminal prosecution, instructions must be based on the evidence and given to suit the case in hand. Payne v. Commonwealth, 255 Ky. 533, 75 S. W. (2d) 14.

The final contention made is that the judgment should be reversed on account of misconduct of the commonwealth's attorney. While Martha Rhodes was testifying, the commonwealth's attorney asked her if it were not true that in the past few years at least four men had been killed in her home. Objection was sustained to this question by the court and the jury was admonished not to consider it. This was obviously an improper question and should not have been asked, but in view of the court's action in sustaining the objection and admonishing the jury, we do not think it was so prejudicial to the substantial rights of the appellant as to require a reversal. There would be some force in appel-

508

lant's argument if this question had been asked him, but such was not the case. It was only addressed to a witness in the case who testified in his behalf.

While it seems that the punishment inflicted by the jury was rather severe, it does not appear that the verdict is so flagrantly against the evidence as to indicate that it was reached as a result of passion and prejudice on the part of the jury. The jury was at liberty to believe or disbelieve appellant's claim that the shooting was done in self-defense and, as we view the evidence, was probably justified in arriving at the conclusion that the deceased had no real intention of doing any violence to appellant and that his actions were those of an ordinary drunk. It was shown that the deceased was unarmed and did not even have a pocket knife on him.

The judgment is affirmed.