## Adams v. Commonwealth.

Jan. 22, 1943.

C. A. Noble and Vernon Faulkner for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

On trial for the murder of James Ritchie, the appellant, Ballard Adams, was convicted of voluntary manslaughter and sentenced to five years in the penitentiary. He seeks a reversal on the ground that the instructions were erroneous.

It is rather difficult to gather from the record a coherent version of the killing but the salient facts appear to be about as follows. Appellant operated a roadhouse in the village of Duane and had his residence in the rear of the same building. Employed in the roadhouse were a girl, Pokie Gayheart, and a young man, Lee Adams, a cousin of appellant. On the night of the killing the deceased, in company with his sister, Bertha, and her boy

friend, Clyde Collins, entered the roadhouse. Some trouble arose between Bertha and Pokie and the deceased took sides with his sister. Clyde Collins was holding Bertha and Lee Adams was holding Pokie to prevent the two girls from fighting. The deceased was making some remarks about the trouble. At this time appellant entered the roadhouse through a rear door leading from his residential quarters. He had a shotgun. He came from behind the counter out into the main room and the killing occurred very shortly. According to witnesses for the Commonwealth, appellant shot the deceased before anything occurred or was said between them. Appellant's evidence was to the effect that he was sitting in his residential quarters talking to his family, preparatory to going coon hunting. He took up the shotgun and started through the roadhouse to a car waiting for him in front. He says he knew nothing of the difficulty or fight going on in the roadhouse when he entered it. His version of the killing may best be expressed in his own words:

> "I walked on out and picked up the shot gun out of the corner, come on out in to the front behind the counter, walked down behind the counter to the ice box and around the counter. I seen a gang ganged up around the heating stove. They were fussing. I walked up there within two or three feet—three feet, I will say, and this Ritchie come out of his coat pocket with a knife open. I said, 'Put that knife up,' 'Go on and not have any trouble at all.' He said, 'Like hell I will.' He started at me. I took the gun and jobbed at him. Jobbed again. He grabbed the gun by the barrel with his left hand. I run backward and he kept coming. He grabbed it again. I kept backing until I hit the icebox. When I run against the icebox, I just swung the gun around. He had ahold of it. As the gun come around, it fired. He kindly limped off and went toward the heating stove."

The deceased was shot in the calf of the leg and bled to death very shortly. Other witnesses corroborated appellant's version of the difficulty. It is conceded the evidence was sufficient to sustain the verdict.

The usual and ordinary murder, voluntary manslaughter and self-defense instructions were given. There was also an instruction to acquit the accused if the shoot-

ing was unintentional and accidental. An instruction was also given pursuant to which the jury were to find the accused guilty of involuntary manslaughter if the killing resulted "from an unintentional *or* careless discharge of the gun by the defendant in doing a wrongful act, such as flourishing a gun or pointing said gun at James Ritchey." The latter instruction was somewhat similar to the one on involuntary manslaughter shown in section 886 of Stanley's Instructions to Juries but that instruction was in the conjunctive form "unintentional *and* careless" rather than the disjunctive form contained in the instruction under consideration.

It is contended that the use of the disjunctive in the instruction in the instant case was prejudicial error because it destroyed the effect of the word "unintentional" in the instruction on accidental killing. We do not see it in that light. If the conviction had been for involuntary manslaughter there would be considerable force in the argument but the verdict, finding appellant guilty of voluntary manslaughter, was, in the circumstances, a most definite rejection by the jury of appellant's theory that the firing of the shot was unintentional. We think any error in the instruction, if error there was, was not prejudicial.

It is next contended that the self-defense instruction was erroneous by reason of its failure to present to the jury appellant's right to act in the defense of Lee Adams. This contention is completely devoid of merit since appellant made not the slightest claim or pretense to have acted in defense of Adams and no reasonable inference is to be drawn from his evidence that it was necessary, or appeared to him to be necessary, to do so.

The final contention is that an instruction should have been given embodying appellant's right, as the keeper of a house of public entertainment, to eject the deceased from the premises if he was creating a disturbance and to use such force as was reasonably necessary to that end. Undoubtedly, the failure to give an instruction of this type is error where a killing occurs while a proprietor is attempting to eject one who engages in a fight or creates a breach of peace or disturbance on his premises. Gargotto v. Isenberg, 244 Ky. 493, 51 S. W. (2d) 443. But in the case before us, just as in the cited case, appellant did not claim that he was attempting to eject the deceased from his premises when the difficulty

between him and the deceased began. His testimony was merely that the deceased attacked him when he told him to put up his knife and not have any trouble. The usual self-defense instruction, which was given, was sufficient in the circumstances properly to present appellant's defense to the jury. One who commits a killing in his own home or in his business establishment is not in every case entitled to an instruction on defense of the habitation or the right to eject from the premises, as the case may be, but such an instruction is proper only when the evidence authorizes it. Rhodes v. Com., 278 Ky. 504, 128 S. W. (2d) 948; Hatfield v. Com., 264 Ky. 721, 95 S. W. (2d) 562. Since the evidence did not show an attempted ejection of the deceased from the premises by appellant, the self-defense instruction was sufficient.

Affirmed.