# Lester v. Commonwealth.

(Decided June 19, 1931.)

704

J. HENRY TAYLOR and J. D. TUGGLE for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Jim Frank Lester seeks to reverse a judgment imposing upon him an imprisonment of 21 years for manslaughter. About 9 p. m., August 13, 1930, Hiram Fee was shot and he died a few minutes thereafter. On August 18, 1930, Hon. D. C. Jones, judge of the Twenty-Sixth judicial district, called a special term of the Bell circuit court to begin in Pineville, Ky., on Thursday, August 28, 1930, and directed that a grand jury be drawn, and summoned for that term to investigate this and other crimes.

August 30, 1930, the grand jury so impaneled returned an indictment charging Jim Frank Lester, Almus Smith, and Bert Epperson with the murder of Hiram Fee. There were several counts in it. First it charged these men with having done this murder pursuant to a conspiracy formed for that purpose, then charged them with murder without charging a conspiracy, then charged Lester did the murder, and that Smith and Epperson aided and abetted him, then that Epperson did the murder and Lester and Smith aided and abetted him, and finally that Smith did the murder and Lester and Epperson aided and abetted him.

A motion was made to set aside this indictment because at the same time this grand jury was in session a grand jury was in session in Harlan county in the same judicial district, thus raising the same question raised in Crenshaw et al. v. Com., 227 Ky. 223, 12 S. W. (2d) 336, which question was there fully considered and decided adversely to appellant's contention.

Lester demurred to this indictment, but it is in proper form and his demurrer was properly overruled.

Before considering other questions presented on this appeal, we shall give a brief account of this homicide.

A carnival was going on in Pineville and three young women had gone to this carnival with their uncle Joe L. Manning. After spending about an hour at the carnival, the party came uptown and were walking about in the town. The two older girls left their companions and got in an automobile with Lester and Smith and lay down in the car and Lester started to drive away, when Manning pursued and tried to stop the car, but failed. Later the car was stopped and Lester and Smith got out of it. Lester drew a pistol on Manning and began to curse and abuse him for following them. About that time Epperson, an uncle of the defendant, came up, took hold of Manning, and asked what was the matter. Epperson then gave Manning a shove and told him to go on. About that time Hiram Fee, a man 67 years old, came up and he, too, asked what was the matter. Lester struck Fee in the face and addressed to him some very abusive language. Fee left. Some one kicked Manning and he left. Later Fee started back to the scene of the difficulty with a pistol. Mr. Bennett Myers and Mr. Osborne saw Mr. Fee and took hold of him and stopped him. Mr. Osborne had him by the left arm and Mr. Myers by his right arm, and they were talking to him and trying to induce him to go back home, when Lester said, ''Watch out,'' or, ''Look out,'' and started toward them with a pistol in his hand. Myers and Osborne turned loose of Mr. Fee and fled for safety. Lester began shooting, according to some witnesses, before these men turned loose of Mr. Fee. According to others, Mr. Fee jerked loose from Mr. Myers and Mr. Osborne and started towards Lester and had shot at him before Lester began shooting. There is evidence there was other shooting at Fee besides that done by Lester. All of this was for the jury to solve.

### The Evidence.

Lester objected to the evidence of Manning relative to his difficulty with Lester and to the evidence of one of these young women about going to the carnival with Manning and about getting in the automobile with Lester and the difficulty between Lester and Manning. The court overruled the objection and admitted the evidence, then said to the jury:

''The court has permitted evidence to come before you in regard to a matter between Mr. Manning, the witness who just testified, and the defend-

ant on trial; there might be possibly other evidence of a similar nature detailed to the jury. I just want to admonish you that you are not trying this defendant for any difficulty he had with Mr. Manning. The Court has permitted this evidence to come in to get the connection leading up to this trouble which resulted in the death of Mr. Fee, for which the defendant is on trial, and you will only consider it insofar as it does connect up with it, in any way, to show how this difficulty occurred in which Mr. Fee was killed and for no other purpose."

The court also admitted evidence of some words that had passed between Mr. Fee and Lester some three or four weeks before this killing, in which the witness said Fee was in his store when Lester came in, and these are the words of the witness:

"He came in and said something to him about he had been talking about or butting in his business and if he didn't quit it he would do something, slap him or something like that, I don't remember the words, but something to that effect, slap him."

According to the witness, Fee made this reply:

"He said, 'I am a citizen of Pineville and have a right to protect it, you shouldn't do the way you are doing around here,' was about the only thing I heard."

This was admitted over the objection of Lester, and he now argues that all of the foregoing was prejudicial to him and the admission of it was error. We do not so regard it, we regard all of this evidence as beneficial to Lester, it showed the genesis of this homicide, it showed Lester had reason to apprehend trouble with Mr. Fee, and we regard the evidence of Manning and of the young woman as beneficial to Lester and as properly admitted in view of the court's admonition. Lester's participation in this shooting certainly would have looked much worse for him without this introductory evidence. After all the evidence was in, then this occurred:

"Counsel for defendant moves the Court to say to the jury that the difficulty mentioned in the evidence which occurred at the corner of the Kroger Grocery Company can be received by it only for the purpose of showing a previous difficulty between

the defendant and the deceased, Hiram Fee, and for no other purpose, and it is not material who was the agressor in that difficulty. Plaintiff objects—objection sustained—defendant excepts.

"Commonwealth by counsel moves the Court to instruct the jury to disregard all evidence in regard to the difficulty between the defendant Jim Frank Lester and Joe Manning and all of the evidence in regard to a previous difficulty between the defendant and Hiram Fee, except insofar as the jury may believe that said previous difficulty with Hiram Fee may show who was the aggressor, if it does so do. Defendant objects—overruled—defendant accepts.

"The Court admonishes the jury that the evidence concerning a previous difficulty between Joe Manning and the defendant, Jim Frank Lester, brought out in a part of the trial of this case, in which the young women entered was permitted to go to the jury for the purpose, and only for the purpose of showing motive, feeling or state of mind upon the part of the defendant, at the time Hiram Fee was killed, if in your opinion it does so do, and the jury shall consider it for no other purpose. Defendant objects—overruled—defendant excepts."

The court ruled correctly. See Winkler v. Com., 229 Ky. 708, 17 S. W. (2d) 999. Evidence of previous difficulties is competent for the purpose of showing motive. Cook v. Com., 232 Ky. 613, 24 S. W. (2d) 269, 272.

This previous difficulty gave Lester cause to feel apprehensive of further trouble with Fee. It was beneficial rather than hurtful to Lester. See Chaplin v. Com., 142 Ky. 782, 135 S. W. 298. If the commonwealth had left out all this evidence of preliminary difficulties and had merely proven the details of the fatal encounter, it would have had a much stronger case. Whether this evidence was admissible or not, Lester cannot complain of it, for it was helpful to him, and he was not prejudiced by its admission.

There was some evidence introduced over Lester's objection showing Lester's resistance to arrest in Gragg's drug store and of his flight, the admission of which he contends was error; but this is utterly without merit. See Hord v. Com., 227 Ky. 439, 13 S. W. (2d) 244; 30 C. J. p. 210, sec. 439; Jones, Commentaries on Evidence (2d Ed.), vol. 3, p. 1914, sec. 1040.

### The Instructions.

No. 1 was a murder instruction. No. 2 was a manslaughter instruction. No. 3 told the jury to find Lester guilty of manslaughter if their only doubt was as to the degree of the offense. No. 4 was a self-defense instruction. No. 5 was an instruction on mutual combat. No. 6 was devoted to definitions, and No. 7 was drawn under section 238 of the Criminal Code of Practice.

Lester says the instructions were erroneous because no conspiracy was proven, so he says, and that hence no instruction on conspiracy should have been given. A complete answer to that is, none was given. There was proof that both Lester and Epperson were shooting at Mr. Fee, and the court instructed on aiding and abetting, which is quite different from a conspiracy instruction.

If A hires B and C to kill D, and B kills D and C is present and aids therein by preventing D's escape or otherwise, and all these facts are established, then A, B, and C are all, as conspirators, equally guilty of murder though A be in another state at the time; but if merely the circumstances of the killing be established without a showing of previous agreement, then B and C are equally guilty of murder, one as the perpetrator of the deed and the other as his aider and abettor.

Lester complains of the self-defense instruction. In that instruction the court in apt language told the jury the circumstances under which Lester had the right to shoot Mr. Fee to protect himself or Bert Epperson or Almus Smith. Lester contends this instruction does not give him the right to defend either Epperson or Smith unless both were in danger, but we cannot so read the instruction. It gave him the right to protect himself or either of them.

The court gave an instruction on mutual combat, and of it the defendant says:

> "The law of mutual combat does not apply in this case and this instruction, we think, was error, and the giving of same to the jury had only one purpose, and that was to particularize and draw and distract the attention of the jury to the fact that the appellant was armed as was the deceased, Hiram Fee."

He does not complain of the form of it. His position is it had no place in this case at all.

To determine the propriety of the giving of this instruction, we must look at what transpired. Lester had had a difficulty with Joe Manning, and had drawn a pistol upon him. Mr. Fee had interfered and Lester had struck him in the face. Fee left, and in about five minutes he was seen returning with a pistol. There was evidence Bert Epperson in the meantime had provided Lester with a second pistol. Lester was waiting around for something. Two men caught Fee, stopped him, and were holding him and talking with him. Lester saw that and as a reasonable man must have known he was then in no danger. Lester had a pistol in his hand. He was protected by the corner of a building. He was apparently ready for the difficulty, so he called, "Look out." The men holding Mr. Fee turned him loose and fled for safety and the shooting began. If the jury believed this, it was warranted in believing this was a mutual combat. Of course, there was evidence contradicting this, but every fact pictured above is taken from the evidence in this record. It is the duty of the court to submit in the instructions every hypothesis supported by any of the evidence, and for the jury to determine what evidence shall be believed.

The prosecuting attorney in his argument said: "The community is against the sort of business this fellow is engaged in." In speaking about Joe L. Manning he said: "If you men are married and have homes and good girls, you will commend him for his interest." "Why didn't Lester explain why he wanted these girls to go around with him?" And, "Clayton Wilder was impeached eighteen times by Miss Ann Gregory."

Lester's objections to these remarks were overruled and he excepted. Now he contends this was error. We do not so regard it. This was legitimate argument, it was based on admitted evidence, upon matters that had occurred before the jury, and was properly allowed. Unfortunately for defendant, his witness Clayton was contradicted many times by Miss Gregory, the stenographer, who had taken down his evidence at a former trial or investigation, and the comment on his evidence and on the contradiction of him was properly allowed. After the defendant's original motion for a new trial had been overruled and at the same term of the court, in fact on that same day, he tendered two additional grounds. The court should have allowed this to be filed. Com. v. Neal, 223 Ky. 665, 4 S. W. (2d) 685. We shall therefore

treat it as filed and overruled. One was for newly discovered evidence, and the other was for improper remarks alleged to have been made in the presence and hearing of the jury.

The affidavit of two proposed witnesses is filed in which they say they saw Mr. Fee with a pistol in his hand and heard him say he was going back up there and kill him. There was evidence from a number of other witnesses that Mr. Fee had gone home and got his pistol, and there was evidence he said he was going to kill him, meaning the defendant. So this new evidence is only cumulative. As to the improper remarks alleged to have been made in the presence of the jury this is the affidavit.

The affiant, G. B. Lawson, says that he was in the courthouse on the second floor on Tuesday, the last day of the trial, and that the courtroom and the corridors were thickly crowded with people from all parts of the county, and as the jury was passing out of the courtroom and through the corridors of the courthouse and on their way to their consultation room on the third floor, that he heard some one say, " 'They ought to hang him,' or that they would hang him, or, 'I guess they will hang him.' This affiant says that he does not know who it was that made the remark or remarks, but that it was made right near and in the immediate presence of the jury, and this affiant says that there was no reason as he sees it to prevent the jury or some of its members at least from hearing just what this affiant said. The affiant says that there was considerable talk among the crowd and that the defendant's name was being used frequently and that the people were saying that he ought to be convicted."

It will be observed this witness does not say this remark, the exact nature of which he is uncertain about, was heard by any members of the jury. He does not say any member of the jury gave any evidence of having heard it, and certainly the jury was not influenced by it for no such punishment was imposed on the defendant as was suggested in the alleged remark.

We feel the defendant has had a fair trial.

The judgment is affirmed.