## Jackson v. Commonwealth.

(Decided Oct. 6, 1936.)

B. J. BETHURUM for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Elwyn Jackson was jointly indicted with Jim Ping,. Earl Whitis, Mrs. Cora Colyer, and Louisa Price for the· crime of "robbery by the use and display of offensive· and deadly weapons, to-wit: pistols." Chapter 52 of the Acts of 1934, now section 1159a of the Kentucky Statutes 1934 Supplement, fixes the penalty for such an offense at death or life imprisonment in the discretion of the jury. The indictment charged a conspiracy, and, in separate counts, charged each of the accused as principal and his or her associates as aiders and abettors. On his separate trial, the appellant was ·convicted and his punishment fixed at life imprisonment. He urges that the judgment should be reversed because: (1) The evidence was not sufficient to sustain the verdict; (2) the court in its instructions to the jury failed to give the whole law of the case; and (3) the commonwealth's attorney was guilty of improper conduct· in his closing· argument to the jury.

The evidence discloses the following facts:

460

Appellant and his codefendants were together during most of the day on Saturday before the robbery was committed in the afternoon of Monday, November 19, 1935. They lived in or near Somerset, Ky., and on Saturday afternoon they drove in Mrs. Colyer's automobile through London to Corbin, Ky., passing on the way the liquor dispensary operated by Clark Feltner, which is located on United States highway No. 25, about one mile north of the corporate limits of the city of London. They returned to Somerset and were together again on the following day, and spent Sunday night near Somerset at the home of a man named Gossett. About 2 o'clock Monday afternoon, the five defendants left Somerset in Cora Colyer's automobile and drove toward London, Ky. Appellant drove the car and Cora Colyer rode with him on the front seat. Whitis, Ping, and Louisa Price were on the rear seat. They reached London about 4 o'clock in the afternoon, and the automobile was stopped immediately in front of the door of Clark Feltner's liquor store. A witness for the commonwealth saw Ping lean forward and converse with Cora Colyer, who was sitting in the front seat. After talking with her two or three minutes, he got out of the automobile and entered the store. Cora Colyer then opened the front door on the right-hand side of the automobile, which was about five or six feet from the entrance to the store, and moved nearer appellant, who was in the driver's seat, as if to make room for a third passenger. When Ping entered the store Feltner and a number of men were sitting in the rear of the room, and Feltner directed Kenneth Johnson, his clerk, to wait upon him. As Johnson approached him, Ping drew a pistol from his left coat pocket and said: "Stick 'em up!" Johnson thought Ping was joking, but Ping drew another pistol from his right coat pocket and, pointing one at the crowd in the rear of the store and one at Johnson, demanded the money in the cash register. Johnson took $35 from the cash register and at Ping's direction put it in the latter's pocket. Ping then backed out of the door, still holding both guns in his hands, and closed the door behind him. He entered the front seat of the automobile, which immediately started toward London at a high rate of speed. A number of witnesses for the commonwealth testified that the engine was running while Ping was in the store. Feltner, accompanied by a taxi driver who was in the store, immediately started in pursuit, and,

after driving about one mile, they met the Colyer car returning north at a rapid rate of speed on United States highway 25. It passed the store where the robbery had just occurred and the intersection of highway 80, which leads to Somerset, and continued on highway 25 toward Mt. Vernon, Ky. It passed out of sight around a bend, and though Feltner and his companion continued along highway 25 for eight or ten miles, traveling at a speed of seventy or eighty miles an hour, they failed to overtake it and returned to London. About twenty minutes after the robbery, news was received in London that a wreck had occurred about two miles south of Mt. Vernon, and that one man had been killed and several other occupants of the wrecked car had been seriously injured. The sheriff and other officers went to the scene of the accident and found appellant and his codefendants near the wrecked automobile, which apparently had been traveling at a high rate of speed and had run over an embankment on a curve. All of the occupants of the car except appellant were seriously injured, and Ping died as the result of his injuries. Appellant was arrested, and several pistol cartridges were found in his pockets. In all, about seventy-five cartridges of .32, .38, and .45 caliber were found in a recess in the cowl of the automobile and scattered on the floor. Appellant stated to one of the officers that Ping said before he went into the store: "I am going to hold this place up." Appellant did not testify at his trial, but Whitis and Cora Colyer testified that they had no knowledge that Ping intended to commit the robbery or that he possessed the pistols.

From the foregoing resume of the evidence, it will be seen that appellant's contention that the evidence was not sufficient to sustain the verdict is wholly without merit. There was ample evidence from which the jury might reasonably infer that a conspiracy to commit the robbery existed, and that appellant aided and assisted Ping in its commission.

Complaint is made of instruction No. 3 because it authorized the jury to find the defendant guilty if they believed from the evidence, beyond a reasonable doubt, that "he was present at the time near enough so to do and did wilfully and feloniously aid, abet, assist, encourage, incite, or command the said Jim Ping" to commit the robbery in the manner theretofore mentioned.

462

It is his contention that at most he was only an aider and abettor, and that the act of 1934 fixes a lesser penalty for one convicted as an aider and abettor in the commission of crimes denounced by sections 1159 and 1159a, Kentucky Statutes Supplement 1934. The last clause of section 1159a reads:

> "That any person or persons aiding or giving protection or comfort, knowingly to any person or persons who has committed acts of robbery or burglary, robbery of bank or safe; shall be confined in the State Penitentiary not less than two nor more than ten years."

This clause clearly refers to an accessory after the fact. That is, to one who had no part in the commission of the crime, but who knowingly aided or gave protection to the guilty person after the crime had been committed. Here there was evidence tending to show that appellant knew the crime was to be committed, and that he aided and assisted Ping in its commission. This made him a participant in the crime as an aider and abettor, and made him subject to the same penalty as the principal. When two or more persons unite to accomplish a criminal object, and one aids and abets the other in the commission of the crime, the aider and abettor is responsible in law to the same extent as the one who actually commits the criminal act. Simmons v. Com., 263 Ky. 171, 92 S. W. (2d) 68; Kinder v. Com., 262 Ky. 840, 91 S. W. (2d) 530; Philpot v. Com., 240 Ky. 289, 42 S. W. (2d) 317. It follows that instruction No. 3, in the form it was given, was correct, but the court should have given an instruction on the latter part of section 1159a, Kentucky Statutes Supplement 1934, heretofore quoted, since there was some evidence, though slight, tending to show that appellant did not know that Ping intended to commit the robbery, and did not know that it had been committed until after he drove away from Feltner's store. He stated to one or more of the officers after his arrest that he did not know Ping contemplated committing the robbery, but he admitted that he learned of it afterwards and was driving the automobile at a high rate of speed when it was wrecked to enable Ping to escape. Under these circumstances, he was entitled to an instruction under the last clause of section 1159a, Kentucky Statutes Supplement 1934. His theory of the case was that he did not aid or assist Ping in the com-

mission of the crime, but at most aided or gave protection or comfort knowingly to him after the act of robbery had been committed. It is the duty of the court in a criminal case to give instructions applicable to every state of case deducible from the evidence, and the accused is entitled to an instruction submitting his theory of the case as disclosed by his testimony. Carsons v. Com., 243 Ky. 1, 47 S. W. (2d) 997; Lester v. Com., 239 Ky. 703, 40 S. W. (2d) 306; Smiley v. Com., 235 Ky. 735, 32 S. W. (2d) 51.

The only statement of the commonwealth's attorney subject to criticism is the following: "I cannot count on a man unless he has been put on the witness stand." This remark was squarely against the inhibitions found in section 1645 of the Kentucky Statutes forbidding comment on the defendant's failure to testify in a criminal cause. The court sustained an objection to the statement, but failed to admonish the jury to disregard it. Appellant insists that the error was not cured by merely sustaining an objection to the statement; but, be this as it may, further discussion of the question is not required, since the case must be reversed on another ground, and it will be assumed that such an improper argument will not be made on another trial.

Judgment is reversed, with directions to grant appellant a new trial consistent herewith.