## Richardson v. Commonwealth.

(Decided April 26, 1938.)

D. C. HOWELL for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Dewey Richardson has appealed from a judgment sentencing him to life imprisonment in the state penitentiary for the murder of Goebel Fraley. He insists that the verdict is flagrantly against the evidence, and that the court erred in failing to instruct the jury on the whole law of the case.

In the afternoon of April 17, 1937, appellant left his mother's home in Estill county, and drove in an automobile to Beattyville to take a train for Hazard in Perry county, where he had been working in a coal mine. The car was owned and driven by Arkansas Gross, who married a cousin of appellant. Appellant's wife and Ernest Sloan accompanied them on the trip. He missed the train, and the party of four drove to Tom Shoemaker's store in the country, where they

found Goebel Fraley, and Fraley requested them to take him to Beattyville. Gross was not acquainted with Fraley, and, after some hesitation on his part, appellant said: "He is all right. Me and him is good friends, let him in." On the return trip, Sloan rode in the front seat with Gross, and Fraley, Richardson, and Richardson's wife rode on the rear seat. When they reached Beattyville, Gross parked the car on Main street near Pryse's Drugstore. Gross and Sloan got out of the car and went into the drugstore. When they came out of the store, they met Bob Mackey on the sidewalk near the Gross car, and an argument ensued. The evidence as to what was said and just what occurred at this juncture is very vague, but it appears that appellant got out of the car, walked up to the crowd, which seemed to be engaged in an argument, and pushed Bob Mackey. Concerning what occurred at this point, Gross testified as follows:

> "I reached up and got Dewey by the shoulder, I said, 'Dewey, Bob is a good friend of mine, me and him works together, they ain't nobody in any racket.' He stepped back off of the sidewalk then, into the street. He was right up by the side of the car, side of the car. Goebel was standing with his back to the door of the car; the door was open and he was standing with his back to the door of the car. I never seen anything then, they kindly split up then, them that was in the street, some went one way and some the other, and me and Sloan went together there and was standing there on the steps of the office talking. I heard a racket, I thought it was the door shutting, somebody slammed the car door, sounded like."

The noise heard by Gross was the muffled report of a pistol. It was soon discovered that Fraley had been shot, and he was taken to a physician's office and later to a hospital in Richmond, Ky., where he died the following day. He had been shot in the abdomen, the bullet ranging downward. Two young women who were passing along the sidewalk near the parked car saw a man sitting on the running board, and just after they passed heard a pistol shot. They looked around, and saw the man still sitting on the running board slumped over with his head on his knees, and another man was backing away across the sidewalk with his right arm extended toward the car. He had something

in his hand, but they were unable to say it was a pistol. Appellant did not remain at the scene of the shooting, but ran down an alley and escaped. A few days later, but after he learned that Fraley was dead, he went to Ohio, where he was apprehended in August, 1937. He was returned to Kentucky and placed in the Estill county jail, but, before his trial, he escaped from jail, after sawing the bars of his cell, and was again at large for several months.

Letcher Charles was introduced by the commonwealth, and testified concerning a statement he claimed he heard appellant make while he was confined in jail. His testimony on this point follows:

"Me and somebody were standing there talking and they was somebody come up and hollered for Dewey Richardson and Dewey came to the door and was talking to him and this boy asked him how came him to kill Fraley or something and he said 'I came down here that morning to kill the God Damn son of a bitch and had been aiming to kill him for two weeks.' "

Charles was impeached, but his credibility as a witness was a question for the jury. There was no proof of ill feeling between the deceased and appellant other than an inference from the testimony of Letcher Charles that it existed. Appellant testified that he and the deceased were friends, and had no difficulty on the occasion in question. It appears that both were ex-convicts, and had been in the penitentiary at the same time, though for separate offenses. The deceased was shot with his own pistol, but appellant admitted that he took it with him when he left the scene of the shooting and threw it away when he reached Berea, Ky., where he boarded a train for Ohio. The evidence, though slight, was sufficient to take the case to the jury and to sustain the verdict. Fitch v. Com., 267 Ky. 646, 103 S. W. (2d) 98; Sawyer v. Com., 267 Ky. 388, 102 S. W. (2d) 371; Hatfield v. Com., 264 Ky. 721, 95 S. W. (2d) 562.

The complaint concerning the instructions presents a more serious question. Appellant's defense was that the shooting was accidental. The evidence clearly indicates that the homicide was either murder or purely accidental. The appellant described the shooting as follows:

"When I got back to the car Goebel was standing there with me and I told him 'There is nothing wrong, don't you go over there, give me that old gun' and he raised his sweater jacket up, he had it down about middleways (illustrating) and when I took hold of the gun it went off."

The court failed to give an instruction on accidental killing, and appellant's contention that this was error must be sustained. He admitted that he was holding the pistol when it was discharged, but he testified to facts which, if true, showed that the shooting was accidental. He was entitled to an instruction submitting his defense in concrete form. The rule is firmly established that the court must give instructions in criminal cases applicable to every state of case deducible from the evidence, and the accused is entitled to instructions submitting his theory of the case as disclosed by his testimony. Literell v. Com., 266 Ky. 235, 98 S. W. (2d) 909; Jackson v. Com., 265 Ky. 458, 97 S. W. (2d) 21; Evitts v. Com., 257 Ky. 586, 78 S. W. (2d) 798; Taylor v. Com., 90 S. W. 584, 28 Ky. Law Rep. 828. In Gibson v. Com., 204 Ky. 748, 265 S. W. 339, 344, it was said:

"Ordinarily, the defendant's theory of the case is simply 'not guilty,' and this theory is fully presented by the instruction to acquit him, unless he is proven guilty beyond all reasonable doubt.

"However, there are cases where the accused admits one or more of the essential elements of the offense charged, but attempts to avoid conviction by proving facts or circumstances to excuse what he did, and under such circumstances his theory of the case should be set out in a special instruction. Thus if A. be charged by indictment with the murder of B. by shooting him, if A. by his evidence, admits the shooting of B. but claims that he shot in necessary self-defense, or that he shot him accidentally, or that he shot him, but that B. did not die of the wound inflicted, or that he shot him, but that at the time he did so he was insane, then in each of those instances, A. would be entitled to an instruction setting out specifically his theory of the case."

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.