## Deaton v. Commonwealth.

October 27, 1950.

Eldred E. Adams, Judge.

W. A. Daugherty and Grover C. Allen for appellant.

A. E. Funk, Attorney General, W. Owen Keller, Assistant Attorney General, for appellee.

JUDGE LATIMER—Affirming.

Appellant, Pat Deaton, was tried in the Pike Circuit Court on the charge of murder. He was found guilty of voluntary manslaughter and his punishment fixed at 8 years in the penitentiary.

He first raises a jurisdictional question. He further insists that he was entitled to have his motion in arrest of judgment sustained; that the verdict of the jury is flagrantly against the evidence; and that the court failed to instruct as to the whole law of the case.

Appellant was indicted in Knott County. After two trials, each resulting in a hung jury, appellant filed his petition, supported by proper affidavits, seeking a change of venue. The court granted the change and designated Pike as the County to which the change was to be made.

Appellant's contention relative to lack of jurisdiction is apparently based on an alleged defective and insufficient record transmitted to the Pike Circuit Court, in that it failed to show (1) that the grand jury, which returned the indictment in Knott County, was properly impaneled; (2) that the order transferring the case to Pike County from Knott County was not signed by the Judge of the Knott Circuit Court.

An examination of the indictment shows that it is full and complete on its face. On the back thereof is the signature of the foreman of the grand jury. There also appears the certificate of the Clerk of the Knott Circuit Court which shows the indictment was "presented by the foreman in the presence of the grand jury to the court and filed in open court, this 18th day of November, 1946." Appellant was tried twice in the Knott Circuit Court under that indictment, and no question was raised about the grand jury having not been properly impaneled. The record shows several

continuances were granted before the two trials. No doubt the order impaneling the grand jury antedates the order granting the change by several courts. It is generally held that it is not absolutely necessary to the jurisdiction that a copy of the entire record be transmitted, but only so much thereof as will enable the court to determine what is in controversy. We cannot agree with appellant in this contention.

In discussing (2) above, appellee states, and we agree, that it would perhaps have been better for the court to have signed separately the formal order granting the change. However, the certificate of the Clerk shows that such order was entered. Appellee points out that it is customary in many, if not most, of the courts for the judge to sign the orders at the end of the day, approving all orders entered that day without having signed any single order separately.

Let us see then what we have here. We have an accused invoking the jurisdiction of this particular court. By his own petition he sought a change of venue. Appellant's attention was called to the fact that the record did not show that the court had signed the order. He continued to trial and thereafter, upon conviction, raised this question for the first time in his motion and grounds for new trial. It appears to us that it would be taking a ridiculous position to permit an accused, after having gone through two trials, to petition for and obtain an order granting a change of venue, then attack and deny the very order which granted him the very thing he had sought. Under the above circumstances we think it was incumbent upon appellant, in attacking the jurisdiction of the court on this ground, to have shown that the Pike Circuit Court did not have jurisdiction because, in fact, the court had not signed the order or the Order Book containing the order granting the change. Appellant did not do this. In the absence of a showing to the contrary, the presumption is that the Order Book was properly signed. Consequently, appellant must also fail in this contention.

The question raised as to the motion for the arrest of judgment must necessarily fall with the above conclusion.

We next turn our attention to the argument that the verdict was flagrantly against the evidence. Ap-

parently, appellant was operating a roadhouse for Cordell Mosley, who was in the armed services. The homicide occurred at this place of business on Sunday evening, February 22, 1942. Caleb Mosley, the chief prosecuting witness, ran a similar place four or five hundred feet distant. Sometime in the afternoon of this Sunday, Caleb Mosley and the deceased, Sanders Davidson, went to Deaton's roadhouse. After a brief stay they, with Orville Flannery, left but later returned. They apparently were drinking. Upon their return they purchased some beer. There is a conflict in the evidence as to the purchase. Appellant says they demanded the beer. Whereupon, appellant said he informed them he couldn't sell beer on Sunday and asked them why they didn't go to Mosley's place for beer if they wanted it. He said Mosley had a gun in his hand and demanded that he bring the beer; that he then brought three cans of beer; and that after drinking the beer, the three went into the front of the building where from 30 to 100 people were congregated. Davidson and Flannery sat down at a table but Caleb Mosley sat on the table, turning it over. Mosley then went over to the stove and commenced pecking on the stove with his fingers or with his gun. We have conflict concerning this. At any rate, he had a gun which, it is claimed, was accidentally discharged hitting Mosley in the leg. Davidson went immediately to Mosley, who at that time was lying on the floor. Appellant, upon hearing the shot, took his gun out of a drawer and rushed to that portion of the building where the gun had been fired. He said Davidson had a gun and was raising up with the gun pointed directly at him. After demanding three times that Davidson drop the gun, Deaton says he then shot him in self-defense. There is considerable conflict in testimony. Some witnesses testified that they didn't see Davidson with a gun. Others testified he had a gun. Some testified that Davidson was in a stooped position over the body of Mosley trying to help him up when he was shot. At any rate, the bullet entered in the top of Deaton's shoulder, coming to the skin at the waistline near the spinal column, from which point it was removed by a doctor.

Mosley testified: "I dropped my pistol off my fingers and somebody kicked it under the bench, and I fell backwards, and Bunk, (Davidson) he come up and

picked me up out of the floor, and he had a hold of me with his right hand around my shoulders and his left hand on me, on my body, picking me up. And another shot went off, and when the other shot fired, he grabbed himself around the chest, like this, (indicating) and walked off.'' (First parenthesis ours.)

It will be seen from the above that there was ample evidence to take the case to the jury and sustain the verdict returned.

On the question of instructions, it is argued that the instructions should not only have included his right to act in defense of himself and his brother but also in defense of guests in his place of business. It is insisted that since the proof shows that there were from 30 to 100 persons in the room where Caleb Mosley fired the shot which brought on the difficulty, the danger was not only imminent to the defendant and his brother but to any guests in the room. Appellee rightly counters that there is nothing in the record to indicate that any of the guests thought they were fired at or were about to be injured in any way. Even the brother of appellant stated in his testimony: ''I thought he was going to shoot me, but he didn't turn on me. He raised up in the direction of my brother.'' Instructions must be based upon the evidence. Hatfield v. Commonwealth, 264 Ky. 721, 95 S.W.2d 562; and Lester v. Commonwealth, 239 Ky. 703, 40 S.W.2d 306. There is no evidence here to show that any of the guests were being threatened or were about to be fired upon or injured in any way.

The judgment is affirmed.