**Sol TINSLEY, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 3, 1954.

Clore & Swinford, Kelly Clore, Pineville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

Sol Tinsley appeals a judgment of conviction of robbery carrying a penalty of ten years imprisonment. KRS 433.120. He, Henry Mills and Narvel Tinsley were jointly indicted for armed robbery. KRS 433.140. It appears that Mills was tried first and convicted. Sol and Narvel Tinsley were tried jointly.

Chester Payne, the victim of the robbery, was employed by a coal company to weigh and sell coal at a point about four miles north of Pineville near a plant of the Kentucky Utilities Company. About nine o'clock on the night of April 3, 1953, while at work, he was violently struck on the head and severely injured, dragged away and rolled down a thirty foot embankment. He was robbed of his pocketbook containing $31. After regaining consciousness in the hospital, Payne described his assailant to a police officer. He recognized the man as being Henry Mills. Mills was arrested and Payne identified him. On this trial Mills testified for the Commonwealth. In substance, his testimony was that on Sol Tinsley's invitation he went to his house that night, and he and Sol picked up Narvel Tinsley. The three of them engaged in drinking whiskey for about a half hour.

On Sol's suggestion, they went to rob Payne, whom Sol knew and believed had a lot of money in his possession. Sol gave him a "crescent wrench" to be used as a weapon. It is described as being about eight inches long with a "box on it that opens up." Sol and Vivian Helton kept watch while he, Mills and Narvel went to Payne's office. Mills described the contemporaneous events about as Payne had done. He gave additional testimony that Sol had waited in the car nearby and they had driven away following the disposition of Payne. Mills had given Sol the pocketbook. Later Sol gave him $10, which he hid behind a picture frame at Ball's Court. Mills' testimony on this trial was in direct contradiction of that given in his own defense, but he insisted that his present testimony was the true account of the affair.

The court directed the acquittal of Narvel Tinsley, apparently on the ground that there was no corroboration of Mills' testimony. He submitted Sol Tinsley's case to a jury under the usual instructions, including the form relating to the necessity of corroboration of an accomplice's testimony in order to convict.

■ The appellant submits that it was error to leave to the jury the question of whether Mills was an accomplice instead of instructing the jury as a matter of law that he was. Reliance is placed in statements in our opinions that the court may or should so instruct the jury where the evidence is without contradiction. See Hendrickson v. Commonwealth, 235 Ky. 5, 29 S.W.2d 646; Goff v. Commonwealth, Ky., 245 S.W.2d 446. That statement has been frequently made as declaring the law, but we do not see how submission of the question to the jury under the present circumstances could have been prejudicial to the defendant's rights.

Appellant's major point is that there was not sufficient evidence to corroborate Mills to authorize a submission of the question of his guilt or innocence. Criminal Code Prac. §§ 241, 242.

■■ The question is whether the corroborative evidence tends to connect the defendant with the commission of the offense. Criminal Code Prac. § 241. This means that the "testimony is of such a nature and character as to inspire belief in a reasonable and unprejudiced mind that it points toward guilt and links up with the principal fact under investigation." Price v. Commonwealth, 296 Ky. 144, 176 S.W. 2d 271, 273. Such evidence may be circumstantial, Goodin v. Commonwealth, 256 Ky. 1, 75 S.W.2d 567, or an admission or confession of the defendant on trial. Scott v. Commonwealth, 303 Ky. 473, 198 S.W.2d 53.

Implications contained in the defendant's testimony which are adverse to his claim of innocence may be considered in weighing the corroborative evidence. We examine the corroborative testimony in the light of these rules.

The defendant, Sol Tinsley, had been going to the place and buying coal from Payne. He owned a "crescent wrench," which Mills stated he had given to him and with which he had assaulted Payne. A doctor expressed the opinion that the wounds inflicted could have been made by such an instrument. Charlie Mayes, a nearby merchant, testified that Mills was at his store that morning in a blue automobile with two colored men. One of them, who was at the steering wheel, had all his fingers but one missing from his left hand. The description fits this defendant. Gillis Smith, another merchant, testified that on the morning of the day of the robbery the three accused men brought some chickens to his store and sold them to him. The night following the robbery Sol Tinsley came back to the store, called him outside and asked him, "Smith, do you believe Mills will talk?" The witness responded, "I don't know, what do you mean?" Tinsley replied, "You know he was accused of hitting an old man at the K. U. plant last night." The witness responded he didn't know that, and then Tinsley said, "Yes, what about this boy, will he talk about us being here yesterday morning?"

The police officer who arrested Mills found $10 at Ball's Court where he had said he hid it the night of the robbery.

At a court of inquiry conducted by the County Judge, Tinsley made a voluntary statement that Mills had come to his house and asked him to drive him to "the swinging bridge at the K. U. plant" (which was near the place of the robbery), gave him some whiskey and promised to pay him 50¢ the next day. He had driven Mills there and beyond where Mills got out of the car and walked back in the direction of Payne's office. He had passed Mills as he was walking along but did not stop to pick him up. He testified that he thought at the time "that something like this was up, and I wanted to stop and warn the fellow at the scales what might happen, but I got afraid and went on."

On his trial, the defendant testified that Henry Mills, "Tubby" Mills and a Hubbard boy talked with him about four o'clock that afternoon about having their car fixed, Sol being a mechanic. They returned about seven o'clock and Mills asked him to drive him to the swinging bridge at the K. U. plant, gave him some whiskey and promised to pay him 50¢. When they reached that point, Mills had him drive farther up the road and turn around, but before reaching the turning around place, Mills got out of the car. His testimony indicates that he suspected that something was wrong. He further testified that he had driven to his mother's home and then to the home of Caney Mills on Stinking Creek, which seems to be some twelve miles away, and stayed there about an hour until 10:15 o'clock. The robbery occurred during this hour. Caney Mills sustained the alibi, but testified that Sol got there about eight o'clock and stayed until about ten o'clock. If he got there at eight o'clock, then he could not have been driving Mills, as he testified. The defendant admitted that he owned a blue Pontiac automobile, such as Mayes described.

■ It seems to us this series of events, some of which are contradictory of the defendant's story and some of which are inconsistent with the claim of innocence, meet the requirements of confirmatory evidence. It is true that mere knowledge that a crime is going to be committed, in the absence of a duty to prevent it, does not make one guilty of participation in it. Elmendorf v. Commonwealth, 171 Ky. 410, 188 S.W. 483, but where one takes another to the scene of a crime with knowledge that it is going to be committed or assists the active culprit to get away, he cannot claim innocence. It is not likely that the defendant, Sol Tinsley, would have driven his friend, Mills, to the place and left him there, four or five miles from town, without means of returning. It is clear that persons who associate together to commit robbery and who assist or are present and ready to aid or do aid in its commission, are all guilty of the crime. See Jackson v. Commonwealth, 265 Ky. 458, 97 S.W.2d 21; Clark v. Commonwealth, 269 Ky. 833, 108 S.W.2d 1036.

■ We think the evidence sufficient to submit the question of corroboration of the testimony of Mills to the jury.

One of the grounds for a new trial was that of newly discovered evidence. The appellant claims overruling the motion is prejudicial error.

Mills had testified that the defendant and Vivian Helton had waited in the automobile while he robbed Payne. Vivian Helton's affidavit, filed in support of the motion, is to the effect that such testimony is not true and that she did not see any of these men that night. Mrs. Gillis Smith's affidavit is that Vivian was at her house all that evening. The defendant's affidavit is of like effect with the addition that until Mills so testified, he had no knowledge of any kind that Vivian would be implicated.

■ It seems to us the trial court's ruling was proper. We observe that the trial was adjourned overnight after Mills had testified. At no time did the defendant ask for a subpoena or make any effort to obtain Vivian's presence before the trial concluded or ask a suspension or continuance until her presence could be obtained.

He did not exercise a proper degree of diligence. Bryant v. Commonwealth, 231 Ky. 152, 21 S.W.2d 231; Epling v. Commonwealth, 233 Ky. 407, 25 S.W.2d 1022; Taylor v. Commonwealth, 269 Ky. 656, 108 S.W.2d 645. Moreover, a new trial should not be granted upon a ground of newly discovered evidence which would merely impeach a witness unless such evidence is of such great materiality as would probably have resulted in a different verdict. Taylor v. Commonwealth, supra; Williams v. Commonwealth, 281 Ky. 70, 134 S.W.2d 983.

The judgment is affirmed.